UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CLAUDIA A SAVOY** | **CASE NO.  2:20-CV-01127** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SERVICE COMPANIES INC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Defendant's Motion to Dismiss Pursuant to Fed.R.Civ. P. 12(B)(6)" (Doc. 6) wherein Defendant The Service Companies, Inc. ("TSC") move to dismiss all of Plaintiff, Claudia A. Savoy's claims for failing to timely file her EEOC charge and failing to administratively exhaust all of her claims. TSC also moves to dismiss Plaintiff's retaliation claims under Title VII and Section 1981 because she has not properly alleged that she engaged in protect activity. Finally, TSC moves to dismiss Plaintiff's race discrimination and retaliation claims under Title VII and Section 1981 because she failed to state a claim for race discrimination, and she failed to sufficiently allege constructive discharge and/or any adverse employment action.

## ALLEGATIONS

Plaintiff brings this lawsuit to redress the deprivation of rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of  1991 ("Title VII") and 42 U.S.C. § 1981,  as amended by the Civil Rights Act of

1991 ("Section 1981").[1] Plaintiff asserts the following allegations in her Amended Complaint.

Defendant, TSC, hired Plaintiff, an African American, on or about June 5, 2015, to work in its transportation department as a driver.[2] The employees who worked in the transportation department transported employees of the L'Auberge Casino Resort, the Golden Nugget Casino Resort and Delta Downs Racetrack Casino Hotel, via vans and/or shuttle buses, to and from their homes to work at the casinos, as well as for shopping on off days.[3]

On or about 2014, TSC hired Amanda Carriere, a Caucasian, as a Human Resource associate in the transportation department.[4] Carriere talked about African Americans' hairstyles negatively and spoke negatively about the manner in which African Americans dressed. Additionally, Carriere directed non-African American employees to make false accusations against African American employees in attempts to get the African American employees disciplined.[5] Carriere's harsh and derogatory treatment direct to African Americans was not directed to non-African Americans.[6] Carriere made such statements as "she could not stand those people," and inquired as to how the non-African Americans like working with "those people." She also referred to African Americans as "monkeys."[7]

---

[1] Doc. 4, ¶ 1.
[2] Id. ¶ 11.
[3] Id. ¶¶ 12 and 14.
[4] Id. ¶ 18.
[5] Id. ¶ 19.
[6] Id. ¶ 20.
[7] Id. ¶ 21.

Plaintiff alleges that Carriere created an environment that was hostile and unpleasant for African Americans, including making false reports against African Americans which caused African American drivers to be written up or otherwise reprimanded, and in some cases causing the drivers to lose their jobs.[8]

On or about June 10, 2016, when a casino employee learned of an opening for a driver in the transportation department and asked another driver how to apply for the position, Carriere had the other driver, who was also African American, written up for directing the casino employee to contact Human Resources.[9] Carriere falsely alleged that the other driver had revealed confidential information and wrote up the driver even though there was no confidential company information disclosed.[10]

Plaintiff complains that there were multiple other situations where Carriere directed non-African Americans in the transportation department to file false reports against African American drivers.[11] In addition, Carriere had African Americans written up for offenses or terminated when Caucasian drivers, who committed the same offense, were not written up or terminated.[12] Plaintiff alleges that senior management condoned the discriminatory conduct against Plaintiff and other African American drivers and encouraged such conduct.[13]

---

[8] Id. ¶ 22.
[9] Id. ¶ 23.
[10] Id.
[11] Id. ¶ 25.
[12] Id. ¶ 26.
[13] Id. ¶ 28.

On or about August 10, 2016, an incident occurred where a Caucasian employee referred to an African American employee as a "nigger." The incident was reported to Director of Human Resources Leslie Oaks; she failed to respond or to take action.[14] The incident was reported to Carriere, but she refused to take any corrective action against the Caucasian employee.[15]

The drivers' supervisor reached out and complained to multiple members of senior management;[16] she also requested a meeting to address the use of derogatory and disparaging words toward the African American drivers.[17] Senior management completely failed to respond to the complaint.[18]

Carriere was allowed to continue harassing and demoralizing African American employees, which created an environment which allowed other non-African American employees to hurl racial epithets without fear of reprisal from local management, or corrective action from senior management.[19]

Because Carriere's treatment of African American drivers intensified, several drivers, including Plaintiff held a meeting concerning the discriminatory conduct and decided to draft a letter of complaint to issue to senior management regarding Carriere's treatment of African American drivers. The letter was signed on or about August 17, 2016, by Plaintiff, the drivers' supervisor, and several other drivers.[20] The drivers' supervisor

---

[14] Id. ¶ 30.
[15] Id. ¶ 31.
[16] Keith Gaines (Director of Operations), Leslie Oaks (Director, Human Resources) and Anjuli Ganguly (Director, Southern Region, Human Resources).
[17] Id. ¶ 32.
[18] Id. ¶ 33.
[19] Id. ¶ 34.
[20] Id. ¶¶ 36, 37, 38.

emailed the letter to senior management Keith Gaines,[21] Leslie Oaks,[22] Anjuli Ganguly,[23] and Erica Monteverdi[24] on or about August 17, 2016.[25] Senior management failed to respond to the email or letter.[26]

On or about August 26, 2016, less than two (2) weeks after the signed letter was sent to management, management suddenly conduct an "audit."[27] Throughout Plaintiff's entire tenure with TSC, the company had never conducted an "audit" of the transportation department.[28]

Plaintiff alleges that the "audit" was not actually an audit, but was a ruse designed to disguise TSC's real intent--to terminate Plaintiff for having signed the letter complaining of the treatment Plaintiff and other drivers endured at the company.[29]

On August 22, 2016, when the Director of Human Resources, Oaks, learned of the meeting of the drivers, Oaks held a meeting with Carriere and another Caucasian employee and informed them of the drivers' complaint.[30] Plaintiff alleges that Oaks "stated that she would have someone in the transportation department fire all drivers and the supervisor before the end of September 2016.[31] Shortly, thereafter, the "audit" was instituted and the

---

[21] Director of Operations.
[22] Director, Human Resources.
[23] Director, Southern Region Human Resources.
[24] Manager, Human Resources.
[25] Id. ¶ 39.
[26] Id. ¶ 40.
[27] Id. ¶ 42.
[28] Id. ¶ 43.
[29] Id. ¶ 44.
[30] Id. ¶¶ 51-54.
[31] Id. ¶ 55.

supervisor and other African American drivers who signed the letter/complaint were terminated.[32]

Plaintiff alleges that she became aware of email communications between Oaks, Carriere and Ganguly wherein TSC had determined that it would terminate Plaintiff and other African American drivers who had lodged a complaint. Some of these communications celebrated the fact that the ploy Oaks had discussed in her August 22, 2016 meeting with Carriere and the other Caucasian employee had been successful.[33]

The communications allegedly reveal that Carriere proclaimed "We did it" and Oaks wrote, "Hey, Yes, Anjuli called me. I'm glad those niggers are gone. We have to work on a few more before September 15th. I told you I would do all I can to get them out of there."[34] Ganguly responded, "You guys are so crazy! I can't stand those niggers! Thanks to Victor[.]"[35]

On September 1, 2016, Plaintiff was advised by Stephanie Legier (HR Associate) that her shift was no longer available, and that it had been changed to an overnight shift from 6:00 p.m. to 2:00 a.m.[36] TSC was aware that Plaintiff had other obligations and that it was impossible for her to work the overnight shift.[37] Plaintiff informed Legier she was not able to work the overnight shift. Legier responded that the overnight shift was the only shift available to her.[38] Plaintiff was forced to leave her position.[39]

---

[32] Id. ¶ 56.
[33] Id. ¶¶ 57 and 58.
[34] Id. ¶¶ 59 and 60.
[35] Id. ¶ 61.
[36] Id. ¶ 45.
[37] Id.
[38] Id. ¶ 46.
[39] Id. ¶ 47.

Before the end of September 2106, several other drivers who signed the August 17, 2016 letter, were either terminated or forced to take shifts that TSC knew those drivers could not accept.[40]

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curium) citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957).

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989). The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.,* 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

---

[40] Id. ¶ 48.

>"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . ." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955.

## **LAW AND ANALYSIS**

On July 28, 2017, Plaintiff filed an EEOC Charge (the "Charge") against TSC which alleged race discrimination and retaliation beginning on August 17, 2016, allegedly lasting

until September, 2016.[41] Plaintiff filed the instant Complaint on August 29, 2020, and an Amended Complaint on September 11, 2020.[42] In her Amended Complaint, Plaintiff alleged race discrimination and retaliation under Title VII and 42 U.S.C. § 1981 which occurred from August 17, 2016 until September 1, 2016.[43]

TSC moves to dismiss all of Plaintiff's claims because she did not timely file her EEOC charge and failed to administratively exhaust all of her claims. TSC also moves to dismiss any Title VII claims that were not exhausted, and Plaintiff's race and retaliation claims under Title VII and § 1981 because they were not properly alleged.

*Exhausted claims*

"[A] court may entertain a Title VII lawsuit only if the aggrieved party has (1) exhausted his or her administrative remedies, and (2) has filed suit within the time permitted after receiving a 'notice of right to sue.'" *Taylor v. Books-A-Million,* 296 F.3d 376, 378-79 (5th Cir. 2002). Exhaustion of administrative remedies is a prerequisite to filing suit under the federal discrimination statutes. *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir. 1995). Exhaustion occurs when a complainant timely files a charge of discrimination with the EEOC and receives a notice of right to sue. 42 U.S.C. § § 2000e -5(e)(f); see also *Taylor,* 296 F.3d at 379. To file suit under Title VII, a plaintiff must first file a charge with the EEOC within a certain time period.[44]

---

[41] Defendant's exhibit A, Doc. 4-1.
[42] Docs. 1 and 5, respectively.
[43] Doc. 5-1.
[44] In Louisiana, that time period is 300 days. See *Martin v. Winn-Dixie Louisiana, Inc.,* 132 F.Supp.3d 794, 915 (M.D. La. 2015).

TSC contends that Plaintiff's EEOC charge was not timely filed. To file suit under Title VII, a plaintiff first must file a charge with the EEOC within a certain time period. In deferral jurisdictions like Louisiana, a 300-day period applies. See *Martin v. Winn-Dixie Louisiana, Inc.,* 132 F.Supp.3d 794, 815 (M.D. La. 2015). TSC remarks that Plaintiff's Charge is dated July 28, 2017; it alleges acts of discrimination and retaliation from August 16, 2016 and lasting until September 1, 2016. June 28, 2017 is 300 days after September 1, 2016. Thus, TSC argues that because Plaintiff filed her EEOC Charge 30 days after the 300-day limitation period, all of her claims were untimely submitted to the EECO and therefore, time-barred.

As noted by TSC, Plaintiff fails to challenge, object or rebut TSC's argument that she filed her EEOC untimely. The Court agrees with TSC that Plaintiff's EEOC charge was untimely filed as mandated by 29 C.F.R § 1601.13(a)(4)(ii)(A)). (The charge is timely when filed within 300 days of the violation). See also *Walton-Lentz v. Innophos, Inc.,* 476 F.App'x 566, 569 (5th Cir. 2012).

## CONCLUSION

The Court finds that Plaintiff failed to file her EEOC charge within 300 days of the violation. Consequently, the Court will grant TSC's motion based on the untimely filing of the EEOC charge.

**THUS DONE AND SIGNED** in Chambers on this 23rd day of February, 2021.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**